[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR VISITATION POST-JUDGMENT CODED #174 AND DEFENDANT'S MOTION FOR MODIFICATION OF VISITATION POST-JUDGMENT CODED #176
Many of the facts that give rise to the above two motions are not in dispute. The marriage between the parties was dissolved by Memorandum of Decision dated April 18, 1997. That decision in part found the following facts and in part entered the following orders:
"The plaintiff is Australian. . . . He is also the director of the Cambodian Genocide Program and, as such, he is responsible for collecting evidence of crimes CT Page 6061 committed in Cambodia by the Khmer Rouge, an insurgency group with a long history of brutal killings. . . . According to the signed financial affidavit filed on her behalf, the defendant is currently employed in Cambodia as the interim director for PADEK, The Partnership for Development in Cambodia. During the course of the marriage, the parties had two children, both of whom are lawful issue of the marriage: Mia-Lia born February 19, 1984, and Derry, born April 15, 1987. The parties agreed at trial that the plaintiff shall have sole custody of the two minor children and that the defendant shall have the right of reasonable visitation with the children. The parties disagreed, however, over the issue of visitation by the children with the defendant in Cambodia. In July 1994, the Khmer Rouge announced that they would be targeting Australians for death. The Khmer Rouge stated that they would behead Australians. At least two Australians were subsequently killed. The Khmer Rouge also publicly described the plaintiff as "an arch war criminal" and declared that he had been indicted as an enemy of the people. The parties' children were visiting the defendant in Cambodia at the time. The plaintiff and the defendant agreed that, in light of the significant risks to their safety due to their relationship to the plaintiff, the children would return to the United States. Those risks continue to exist today. (Emphasis provided).
The court enters the following orders:
 1. The plaintiff is awarded sole custody of the two minor children.
 2. The defendant is awarded the right to reasonable and liberal visitation, said visitation to be agreed upon by the parties. The children may visit the defendant in Cambodia only pursuant to the written agreement of the parties, which agreement shall not be unreasonably withheld. The court finds that, given the present situation in Cambodia, it is not unreasonable for the plaintiff to withhold consent at this time."
The only finding regarding "the present situation in Cambodia" are those cited above. CT Page 6062
The two motions filed by the defendant will be considered seriatim:
 A. The Defendant's Motion for Visitation Post-Judgment Coded #174.
In this motion the defendant alleges that "although she has previously made requests to the plaintiff in an effort to arrive at a written agreement regarding visitation with the children in Cambodia, she has not been able to persuade the plaintiff to enter into a written agreement. The defendant believes that the plaintiff's failure to enter into such a written agreement is unreasonable."
One of the Khmer Rouge leaders namely, Ta Mak is scheduled for trial that may take place in Cambodia this summer. Various other Khmer Rouge leaders have been summoned to that trial. Ta Mak had been the military commander in the Khmer Rouge. Various other Khmer Rouge leaders have since surrendered and are still alive. Some of them presently hold positions in the existing Cambodian Government The plaintiff has written extensively regarding the Cambodian Genocide of 1975-1979 during which approximately 1.7 million people perished. He has taken the position that top level officials of the Khmer Rouge should be tried for crimes against humanity and Genocide. There is a danger that such a trial would result in rioting within Cambodia.
From the evidence presented the court finds that the refusal of the plaintiff to agree in writing for the children to visit the defendant in Cambodia has not been unreasonably withheld. The defendant's motion for visitation coded #174 is therefore denied.
 B. The Defendant's Motion for Modification of Visitation Post-Judgment Coded #176.
In this motion the defendant alleges that there has been a substantial change in circumstances since the judgment was entered and that it is now safe for the children to visit their mother in Cambodia. The threshold issue before the court is whether the defendant has met her burden of proving that there has been a material change in circumstances since the judgment of April 18, 1997.
The court finds that she has failed to meet that burden. The original judgment referred to the fact that in July of 1994 the CT Page 6063 Khmer Rouge announced that they would be targeting Australians for death. The Khmer Rouge also publicly described the plaintiff as "an arch war criminal" and declared that he had been indicted as an enemy of the people. The defendant has not presented any credible evidence to show that the plaintiff who is an Australian would not still be targeted for death by the Khmer Rouge. The defendant has not presented any credible evidence to refute the finding of the court as part of the dissolution decision of a significant risk to the safety of the children due to their relationship to the plaintiff.
The parties are also in dispute as to the present political climate in Cambodia and the relative safety of the country.
There are former Khmer Rouge leaders who are still alive and have not been captured. There are 6,000 or more former Khmer Rouge soldiers who are now in uniform for the Cambodian Government in the northwest part of Cambodia including former Khmer Rouge officers.
The plaintiff has compiled much of the evidence that would be used by the U.N. in the event there was an international tribunal trial for Tamok. The plaintiff could also be a witness in such a trial. The children in question have the plaintiff's last names and are also Australian by birth. The court finds that given the present political climate in Cambodia that visitation in Cambodia by the children could be dangerous for them.
This court has also considered the fact that the children wish to visit their mother in Cambodia.
The defendant's motion to modify coded #176 is denied for two reasons:
1. The defendant has failed to prove a material change of circumstance; and
2. From all the evidence presented the court finds that it is in the best interest of the children that they not be allowed to visit the defendant in Cambodia.
The plaintiff has submitted proposed orders regarding visitation dated April 23, 1999 which the court finds are in the best interest of the children and approves of those claims for relief filed by the plaintiff and enters orders in accordance CT Page 6064 with those claims.
Sidney Axelrod, Judge